

United States District Court
Southern District of Texas
FILED

AUG 3 1 2011

David J. Bradley, Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Stephen Manley,<br>Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. 4:11-cv-02408 |
| Invesco Group Services, Inc. | §<br>§ | |
| Matrix  Resources, Inc. | §<br>§ | |
| National ProSource, Inc. | §<br>§ | |
| Defendant. | §<br>§ | |

## PLAINTIFF'S MEMORANDUM IN RESPONSE
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted, _Stephen Manley_

By: Stephen Manley
  Stephen Manley
  2901 Fulton Suite 347
  Houston Texas 77009
  Tel. 832-343-4484

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the forgoing instrument was served on the following counsel of record this Motion in Response to Summary Judgment was sent via electronic filing , certified mail, return receipt requested and/or regular mail.


Cristina Portela Solomon
1000 Louisiana, Suite 3400
Houston, Texas 77002-5007
713-276-5500
713-276-5555 facsimile


Jessica Glatzer Mason
1000 Louisiana, Suite 3400
Houston, Texas 77002-5007
713-276-5500
713-276-5555 facsimile

Yvette V. Gatling
LITTLER MENDELSON
1301 Mckinney Street, Suite 1900
Houston, Texas 77010


Carolyn Russell
Martin A. Rodriguez
OGELTREE, DEAKINS, NASH, SMOAK & STEWART, P.C
Dallas Street, Suite 3000
Houston, TX 77002


/s/ Stephen Manley
Stephen Manley

## TABLE OF CONTENTS

Table of Authorities..............................................................................................ii

Introduction.....................................................................................................1

Statement of the Facts.......................................................................................8

Arguments .....................................................................................................10

Objection.......................................................................................................13

Plaintiff's Qualifications..................................................................................15

Summary Judgment Evidence..........................................................................17

Conclusion.....................................................................................................18

# TABLE OF AUTHORITIES

## <u>Cases</u>

Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975)............................................20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)..............................................12

E.E.O.C. v. Steamship Clerks Union, Local

1066 48 F.3d 594, 602 (1995)............................................................................8

Griggs v. Duke Power Co., 401U.S 424 (1971)....................................................4

Griggs v. Duke Power Co., 401U.S 424 (1971)....................................................5

Griggs v. Duke Power Co., 401U.S 424 (1971)....................................................7

Griggs v. Duke Power Co., 401U.S 424 (1971)....................................................8

Griggs v. Duke Power Co., 401U.S 424 (1971)........................................ ...........11

*J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*,

76 F.3d 1245, 1251 (1st Cir. 1996)...................................................................12

McKennon v. Nashville Banner Publishing Co.,

513 U.S. 352 (1995).......................................................................................18

O'Day v. McDonnell Douglas Helicopter Corp.,

79 F.3d 756, 759 (9th Cir.1996).......................................................................19

Wards Cove Packing Co. v. Atonio, 490 U.S. 642 (1989)......................................10

## <u>Statues</u>

Fed. R. Civ. P. 56(c).....................................................................................12

Title VII Civil Right Act of 1964.......................................................................8

The Civil Rights Act of 1991..............................................................................8

Plaintiff asks the court to deny defendant's motion for summary judgment in whole and/or in part.

## A. Introduction

1. Plaintiff is Stephen Manley; defendant is INVESCO ET AL .

2. On 6-24-2011, Plaintiff sued defendant for Disparate Impact, and Title VII violations as well as Violation of the Civil right Act of 1991. To establish a prima facie case, a Plaintiff must show (1) that the employer's facial neutral employment practice; (2) caused a disparate impact; (3) in the treatment of a protected class

3. On 8-11-2011, defendant filed a Motion for A Summary Judgment

4. A. On 8-11-2011, defendant filed a motion for summary judgment against Plaintiff's claim, for what they have wrongfully classified and construed as fabrications or misrepresentations on Plaintiffs application. Manley whole heartedly disputes all defendant claims and assertions and disagrees with all the contentions of the defendant.

B. Plaintiff answered all questions on the application within the scope of the Fair Credit Reporting Act which Defendant National Prosource's employee Katie Jones and the Defendant's online application portal noted that they adhered to See Defendant Summary Judgment Attachment A-1 page 2 of Application Information. According to the binding contract of employment, line 10 of paragraph 1 state the following, " I certify that ... I have read the attached summary of rights under the fair credit reporting act.

C. Furthermore, National Prosource failed to adhere to the FCRA, as they said they would, as part of and during their application process. The misrepresentations, statements, acts, and omissions which Defendant Prosource via Katie Jones presented to Plaintiff were detrimentally relied on by Plaintiff; these statements, acts, misrepresentations, and omissions of National Prosource were done by Matrix who also declared that they abide by the FCRA in their application process in which defendants did not adhere to during the negotiations, bargaining, and selection process in which Plaintiff relied.

D. A genuine issues of material fact that is in dispute is that Plaintiff relied on the verbal contract and written contract that was formed between the parties during the selection, hiring,or application phase with was conducted on 8/23/2010 by National Prosource via Katie Jones. Plaintiff was advised by Katie Jones on their adherence to the Fair Credit Reporting Act. See Defendant Summary Judgment Attachment A-1 page 2 of Application Information. According to the binding contract of employment, line 10 of paragraph 1 state the following, " I certify that … I have read the attached summary of rights under the fair credit reporting act.

E. Defendants employment practice on its face seems neutral; but the practice of automatically disqualifying applicant with criminal histories has a statistically disproportionate adverse impact on member of a protected classes  see Griggs v. Duke Power Co., 401U.S 424 (1971).

5. Summary judgment is improper in this case because there are genuine issues of material fact in dispute on each element of Plaintiff's claim for Disparate Impact, Race Discrimination, and Sex Discrimination under Title VII and the Civil Rights Act of 1964 as well as the Civil Right Act of 1991:

A. A genuine and material issue in dispute is defendant's employ employment practices that are facially neutral in their treatment of different groups but they in fact fall more harshly on one group than another and has an adverse impact and cannot be justified by business necessity see Griggs v. Duke Power Co., 401U.S 424 (1971).

B. A genuine and material issue in dispute is given the history of slavery in this County and the statistically disproportionate number of arrest and convictions of Africans American and Hispanic the defendant practice more harshly and disparately impacts member of this protected class, Defendants use of the data obtained to make adverse employment decision solely base of the information obtained in criminal records disparately impacts persons of these protected classes is vast and disproportionate numbers statistically. See E.E.O.C. v. Steamship Clerks Union, Local 1066 48 F.3d 594, 602 (1995).

C. A genuine and material issue in dispute is the legislative intent of the FCRA was to attempt to curb the disadvantageous and discriminatory use of criminal records obtained by prospective employers by putting some type of limit on their intrusion into person past where the offense antedates' seven years. At the same time realizing that people do mature and grow while given a sense of fairness and hope the job seeker.

D. Prosource and Matrix as well as INVESCO violated these laws by their discriminatory uses of their blanket policy to automatically disqualify as well as not hire person with convictions records during their selection process. See Exhibit A paragraph 11 and 12 of Defendant Motions for Summary Judgement ;As the affiant John Davis contends in his sworn affidavit National Prosource maintains a blanket employment practice that automatically disqualifies applicants of any race with criminal backgrounds this practice is in violation to Civil Rights Act of 1964, § 701 et seq., 42U.S.C.A. § 2000e et seq.

E. According to defendant(s) Motion For Summary Judgement see Defendants exhibit A paragraph 11 and 12, exhibit A-4, and exhibit A-5; Vice Preisdent Davis of Prosource affirm two caucasian males were no longer consider for employment after a criminal background checks was conducted after the applicants had certified that they agreed, that Defendant Prosource would abide by the Fair Credit Reporting Act during their selection and application process.

F. See Defendant Motions for Summary Judgement exhibit A-4 and A-5 on page 2 of Application Information line 10 of paragraph 1 which state the following, " I certify that ... I have read the attached summary of rights under the fair credit reporting act. According, to Defendant Motion For Summary Judgment the white applicants likewise answered National Prosource's misrepresented and vauge question that they too detrimentally relied on due to Prosource's deception and were denied an equal employment opportunity.

G. These contracts that were made by Prosource were conditions as well as binding contracts of employment in-which defendant(s) have utilized undue influence and misrepresentations to take away the applicant rights as well as the applicant ability to

bargain. Clearly, National Prosource practices has been deceptive acts in addition to misrepresentations to applicants by inducing applicants to give them the right to conduct background checks within the scope of the Fair Credit Reporting Act; which happen during the initial application and selection process; afterwards National Prosource exceeded the scope of the agreement and permissions granted them as it relates to the Fair Credit Reporting Act by not adhering to the standards in which Prosource induce applicants to agree too.

H. After which, Prosource breaches their promise then blatantly rejectes the applicants and construes their compliance and agreement with the FCRA as lies; when in fact Prosource deceived and misrepresented themselves and abuse the permission granted them as well as their contractual obligations made to the applicants. Defendants employment practice appears neutral on its face but has a disparate impact; the doctrine of disparate impact holds that employment practices may be considered discriminatory and illegal if they have a statistically disproportionate "adverse impact" on members of a minority group See Wards Cove Packing Co. v. Atonio, 490 U.S. 642 (1989) and Griggs v. Duke Power Co., 401 U.S. 424, 431-2 (1971)

**B. Statement of Facts**

6. There is genuine and material issue in dispute. Defendant maintain an employment practice the appears neutral on its face but has a disparate impact; the doctrine of disparate impact holds that employment practices may be considered discriminatory and illegal if they have a statistically disproportionate "adverse impact" on members of a minority group see

Griggs v. Duke Power Co., 401 U.S. 424, 431-2 (1971).

A. Defendant(s) utilizes discriminatory employment practices in violation of Title VII: August 16,2010 Plaintiff was interviewed by Stephanie Cox (of Matrix Resources ) who conducted a criminal background check on Plaintiff Stephen Manley after Martix received the record Plaintiff was no longer consider for the position due to his convictions; the Plaintiff was told by Stephanie Cox of Matrix that the agency adhered to the standards of the FCRA § 605 [15 U.S.C. §1681c].On September 13, 2010 [see plaintiff exhibit A-3A and exhibit A-3B] Stephanie Cox of Matrix  informed Plaintiff that INVESCO has a blanket policy that automatically disqualify person with felonies and various misdemeanor who's behalf she was acting.

B. Matrix, Prosource, and Invesco interconnect policies has a disparate impact upon protected classes Blacks, and Hispanic and others.The doctrine of disparate impact holds that employment practices may be considered discriminatory and illegal if the practice has a statistically disproportionate "adverse impact" on members of a minority group see Griggs v. Duke Power Co., 401 U.S. 424, 431-2 (1971):. Likewise Defendant National Prosource was hiring, screening, and working as an agent for INVESCO as well  (for the same position). Prosource conducted their background check on Plaintiff on 8/23/2010 shortly thereafter. Plaintiff was interviewed and skill tested for the same or similar database developer position on 8/23/2010 [See Plaintiff's Exhibit A-2A, A-2B, A-2C];On 8/23/2010 during the interview process Plaintiff's criminal record was retrieved by Katie Jones of Technical Prosource via the internet from backgroundchecks.com. Subsequently, Prosource's employee Kati Jones, discriminatorily used the records obtain to discriminate against Plaintiff; defendant(s) collective employment practices and screening processes were utilized in an adverse manner

to deny plaintiff an equally employment opportunity.

C. Defendant(s) has a pattern and a blanket policy of denying employment opportunities to individuals solely based on their criminal records which disparately impacts and adversely affects the minority applicant pools; who are protected classes under the law. Equally, defendant(s) retrieved criminal information which antedated seven years which violates plaintiff's rights under the FCRA § 605 [15 U.S.C. §1681c]; while simultaneously using plaintiff record in a discriminatory manner.

Defendants Prosource, Matrix, and INVESCO use criminal background information as the sole determinant in denying Plaintiff an employment opportunity. Although these practices appear to be neutral, they serve to discriminate against a disproportionate number of member of a protected class see Griggs v. Duke Power Co., 401 U.S. 424, 431-2 (1971)

### C. Argument

7.  Although summary judgment is proper in a case where no genuine issue of material fact exist, this is not a case in which the court should grant summary judgment. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). 8.   A  defendant  moving  for summary judgment on a Plaintiff's claim must demonstrate the absence of a genuine issue of material fact by either (1) submitting summary-judgment evidence that negates the existence of a material element of Plaintiff's claim or (2) showing there is no evidence to support an essential element of Plaintiff's claim. *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996); *see Celotex Corp.*, 477 U.S. at 322-23. Defendant cannot rely on conclusory such as the statement made by Prosource's John Davis's; statements to establish that Plaintiff has not presented evidence on an essential

element of its claim. Rather, defendant must demonstrate the absence of a genuine factual dispute. *See Celotex Corp.*, 477 U.S. at 324-25. Only if defendant meets its burden is Plaintiff required to respond by summary-judgment proof to show a genuine issue of material fact. Fed. R. Civ. P. 56(e)(2). {*See O'Connor's Federal Rules, "Defendant's motion," ch. 7-B, §7.2.1, p. 533.*}

9.   In determining whether there is a disputed issue of material fact that prevents summary judgment, the court must consider all evidence in the light most favorable to Plaintiff as the nonmovant. *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1236-37 (10th Cir. 2002). The court must also resolve all reasonable doubts about the facts in favor of Plaintiff as the nonmovant. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 455-56 (5th Cir. 2005). {*See O'Connor's Federal Rules, "General," ch. 7-B, §7.1, p. 532.*}

10.   The material issue in dispute is that Defendant maintains an employment practice that appears neutral on its face but has a disparate impact; the doctrine of disparate impact holds that employment practices may be considered discriminatory and illegal if they have a disproportionate "adverse impact" on members of a minority group. Under the doctrine, a violation of Title VII of the 1964 Civil Rights Act may be proven by showing that an employment practice or policy has a disproportionately adverse effect on members of the protected class as compared with non-members of the protected class see Griggs v. Duke Power Co., 401 U.S. 424, 431-2 (1971).

A. The doctrine of Disparate Impact entails that "A facially neutral employment practice is one that does not appear to be discriminatory on its face; rather it is one that is discriminatory in its application or effect." Where a disparate impact is shown, the Plaintiff can prevail

without the necessity of showing intentional discrimination against defendant see Griggs v. Duke Power Co., 401 U.S. 424, 431-2 (1971):.

B. A genuine and material issue in dispute is Defendant(s) has a employment practice and selection process that falls drastically below the 80% Rule and is even exacerbated by Plaintiff use of convictions records to automatically disqualify people within protected classes see Griggs v. Duke Power Co., 401 U.S. 424, 431-2 (1971):.

C. A genuine and material issue in disputes is defendant(s) via Katie Jones employee of National Prosource knowingly and willfully violated Plainitff rights under FCRA and abused its discretion as it related to the Fair Credit Reporting Act, by using the data in a illegally and discriminatory manner National Prosource's policy automatically discriminate and disqualifies person with criminal histories and prevents a person form obtaining a fair and equal opportunity, defendant is not entitled to summary judgment in this case.

11. A genuine and material issue is defendant(s) employment practice, and selection process violates public policy and violated the scope of Plaintiff' and Defendant agreement which was, defendant agreed to adhere to the standards of the FCRA. Plaintiff never authorized the defendant to break the law. Plaintiff never agreed with the defendant(s) discriminatory use of the information obtained from any consumer report obtained from Background Check.com or any other source which violated the FCRA and plaintiff civil rights.

A. Plaintiff further disputes defendant contention that I waived my rights as suggested; I

contend that I only answered in accord with the FCRA which was agreed upon during my online application process and the interview process on 8/23/2010.Defendant(s) misrepresented the facts that lead to the signing of the wavier and Plaintiff understanding of the meaning of the wavier. Plaintiff had no knowledge of the meaning of the waiver seeing that defendant misrepresented their stance.

### D. Objections

12. The court should deny defendant's motion for summary judgment because defendant's answer does not allege all the elements of its defense and therefore does not support it's motion for summary judgment. *See Ienco v. Angarone*, 429 F.3d 680, 684-85 (7th Cir. 2005).

A. Defendant(s) continues to misrepresent the facts of the case when they allege, Plaintiff agreed with their vague and ambiguous question on its application when in fact I only answered it in accordance with the FCRA; which was presented to me by Katie Jones of Prosource on 8/23/2010 which was in my knowledge the scope of their question; which I answered accordingly and agreed to this extent and in this respect only. See Plaintiff exhibit A-4B paragraph 1 line 10 affirms the fore-stated.

B. Plaintiff fervently disputes Defendants contention that Plaintiff was aware of Defendant(s) intention to break the federal law and use a discriminatory practice to make an adverse employment decisions concerning Plaintiff; when in fact Plainitff was told by Katie Jones of Prosource and Stephanie Cox of Matrix that they both abided by the standards of the FCRA.

C. Plaintff was induced to believe Katie Jones of Prosource and Stephanie Cox of Matrix and Invesco that they were abiding by the FCRA; and the federal laws in their selection process simply because they informed Plaintiff they would and of his rights under the FCRA. See Plaintiff exhibit A-4B paragraph 1 line 10 affirms the fore-stated. Also see Plaintiff's exhibit A-4E paragraph 4 line 4 which affirms the same.

D. The argument advanced by defendant in reference to addressing the have you ever been……. question in defendant application is vague, full of indefiniteness, it also leave out material matters; that is important to fully understanding the restrictions on the question; and how such an open and board question is relevant to the FCRA and job relatedness. Plaintiff answered in accordance with this knowledge and mens-rea ;Katie Jones of Prosource promised to use the parameters of FCRA ;which she said Prosource would adhere to in Prosource's selection process; this is the position that was presented to plaintiff during the application process on 8/23/2010 by Katie Jones of Prosource. Additionally, earlier that week I was presented with a similar document on 8/16/2010 by Stephanie Cox of Matrix again I complied with that standard and answered the question within the scope of the FCRA. See Plaintiff's exhibit A-4 A, A-4 B, A-4 C, A-4 D and A-4 E which support these facts.

E. Moreover, Defendant(s) misrepresented waiver is against public policy and the law. Defendant(s) exercised undue influence over the Plaintiff and took away Plaintiff's ability to bargain when they refuse to adhere to the standards of the FCRA which Prosource initially agreed to do. Defendants were the dominate party in the bargaining and the negotiation process. Defendant(s) employment practices and decision to willfully go beyond the scope of the bargain, breached the contract that Defendant made with Plaintiff; which was abiding by the FCRA and their search would be confined to the standards of the FCRA.

13. The court should deny defendant's motion for summary judgment because Defendant failed to confer with Plaintiff and failed to include a certificate of conference its motion as proof of conference; which evidences a failure to confer before filing a motion for summary judgement. *See Wilks v. Elizabeth Arden, Inc.*, 507 F. Supp. 2d 179, 184-85 (D. Conn. 2007); *McDermott v. Lehman*, 594 F. Supp. 1315, 1317 (D. Me. 1984). Defendant(s) motion attempts to usurp Plaintiff due process right and should be denied. Also; there has not been adequate discovery or evidence to support defendants contention.

### E. Plaintiff Qualification

14. A. Plaintiff unequivocally denies and disagrees with defendant(s) false assertions that Plaintiff was unqualified for the position. The position was junior position, and the person if hired would be trained by INVESCO. [See Plaintiff Exhibit's A- 1A and A-1B] These exhibit show that on 8/16/2010 several days earlier that Co- Defendant Matrix submitted Plaintiff for the same position, for the same assignment with INVESCO. Stephanie Cox the senior recruiter of Matrix felt Mr. Manley was indeed qualified and requested that he be accepted for the position.

B. [See Plaintiff's Exhibit A-2A, A-2B, A-2C] This group of exhibits show that on 8/23/2010 that Plaintiff took an exam at (See Plaintiff's Exhibit A-2A) National Prosource; the exam was administered via Kenexa Prove It system, the exam was authorized or administered by Katie Jones of Prosource. Plaintiff ranked very highly in the percentile ranking and global rankings see (see Plaintiff's exhibit A-2 B).

C. Moreover, Plaintiff fully maintains an running objection and disagrees with defendants assertion because (Senior Recruiter) Katie Jones of National Prosource communicated in an email on Friday 9/10/2010 that Plaintiff was a very good candidate for the position and had an excellent shot of being considered for it if not for Plaintiff's criminal background (see Plaintiff's exhibit A-2 C). Likewise, Matrix maintain an employment practice that seem neutral on its face but has a statistically disproportionate adverse impact on protected classes see Griggs v. Duke Power Co., 401 U.S. 424, 431-2 (1971).

D. See Plaintiff's exhibit A-2C, A-3A, and A-4B it shows that Prosource maintains an employment practice that automatically disqualifies and discriminates against applicants with criminal histories from their selection process. The practice on its face seems neutral; but the practice of automatically disqualifying applicant with criminal histories has a statistically disproportionate adverse impact on members of protected classes. Defendant has a practice to lie about and misrepresent themselves and induce applicants to conform to the standards of FCRA by notifying them of the Fair Credit Reporting Act. While simultaneously, and fraudulently misrepresenting to the applicant their true desire; as well as their true extent of their use; in conjunction with their intention to willfully exceed the scope of the permission granted them in accord with the FCRA ; which the Defendant has use to artificially make out a defense on the sham basis that the applicant lied about his history.

Furthermore, as defendants advance their after acquired argument; Plaintiff contends that there is a genuine issue of material fact whether plaintiff's invented wrongdoing was of such severity that Prosource would have terminated him had it known of it at the time the misconduct occurred is speculative and hyperbole. See McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 362-63, 115 S. Ct. 879, 886-87, 130 L. Ed.2d 852, 864 (1995).

Equally, as the Ninth Circuit has said, "the inquiry focuses on the employer's actual employment practices, not just the standards established in its employee manuals, and reflects a recognition that employers often say they will discharge employees for certain misconduct while in practice they do not." Moreover, O'Day v. McDonnell Douglas Helicopter Corp., 79 F.3d 756, 759 (9th Cir.1996); "Proving that the same decision would have been justified ... is not the same as proving that the same decision would have been made." Price Waterhouse, 490 U.S. at 252, 109 S.Ct. 1775. In absence of further evidence that the policy actually would have been applied, to its stated policy is therefore insufficient to carry its burden of persuasion on the after-acquired evidence defense.

E.  See Plaintiff's exhibit A-4B which support this fact. According to the binding contract of employment, line 10 of paragraph 1 which state the following, " I certify that ... I have read the attached summary of rights under the fair credit reporting act( The Attached Summary of Rights has been Conveniently Left out of the application that the applicant's signed). Also see line 10 of paragraph 1 of Plaintiff's exhibit 4-G where National Prosource's applicants Randy R. Cantrell's and Plaintiff's exhibit A-4I Kevin William Chambers application where they agree to the search of their criminal histories; as a condition of employment being restricted to the standards of the Fair Credit Reporting Act which National Prosource has a consistent practice and policy of misrepresenting and inducing applicants to adhere too.

F.  Even where an employer is not motivated by discriminatory intent, Title VII prohibits an employer from using a facially neutral employment practice that has an

unjustified adverse impact on members of a protected class. The Supreme Court first described the disparate impact theory in 1971, in Griggs v. Duke Power Co., 401 U.S. 424, 431-2 (1971): Title VII "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation. The touchstone is business necessity. . . . [G]ood intent or absence of discriminatory intent does not redeem employment procedures or testing mechanisms that operate as 'built-in headwinds' for minority groups and are unrelated to measuring job capability."See  Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975)

### F. Summary-Judgment Evidence

15. In support of Plaintiff response, Plaintiff includes the following evidence in the attached appendix.

a.    The affidavit of plaintiff Stephen Manley

b.    The exhibits, which are verified as authentic, establish the following facts: That defendant has an employment practice that seems neutral on its face but has a statistically and disproportionate adverse impact on members of protected classes. And the evidence and exhibits will show that there are true and genuine issues of material facts in dispute. Also the exhibit and evidence will show that defendant(s) are not entitled to summary judgments.

## H. Conclusion

16. In summary defendant National Prosource is not entitled to summary judgment. There are material and genuine issue that are in dispute. There is evidence attached, and legal argument that must be resolve by a fact finder on the merit of the case. For these reasons, Plaintiff asks the court to deny defendant's motion for summary judgment in whole and in part.

Affidavit Divider

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **Stephen Manley,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:11-cv-02408** |
| | § | |
| **Invesco Group Services, Inc.** | § | |
| | § | |
| **Matrix  Resources, Inc.** | § | |
| | § | |
| **National ProSource, Inc.** | § | |
| | § | |
| **Defendant.** | § | |

### AFFIDAVIT OF STEPHEN MANLEY

Before me, the undersigned notary, on this day personally appeared Stephen Manley the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

1. "My name is Stephen Manley. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. To all involved person and person whom this affirmation concerns. During the Month of August 2010 I was looking for employment. I subsequently received an e-mail from Stephanie Cox of Matrix on Aug 12 2010 who invited me to apply for a position that she thought I would be a good fit. Afterwards an interview was arranged for August 16, 2010. In an interview with Stephanie Cox I was informed that the position was a junior position and that the position would train the hired person on Siebel. Also Mrs. Cox mentioned to me that criminal backgrounds are very important and that she is often surprised with what she

recovers during her search. Equally, Mrs. Cox gave me some additional information including a formal job application during the interview and a request for me to give Matrix permission to conduct a search. Collectively, these documents explained the Fair Credit Reporting Act and their adherence to it which I read and agreed to. See exhibits A-1A ,A-1B and A3-B and 4-E.

3. My first thought when Mrs. Cox mention a background checks made me a little apprehensive because previous employers have automatically rejected my application at this point and I was concerned the same would happen in this instance; I must admit, it has been difficult trying to find gainful employment. In my experience the issue is never about my skills or my education or even how those skill relate to the job but it's solely my background and the employers employment practice which seem neutral on it face to automatically disqualify person with a criminal history.

Furthermore, employers employment practice of automatically disqualifying me because my criminal history have made it even more tedious; because in my personal experience every employers automatically disqualified me right after they conducted a criminal background check in spite of factors such as , circumstance surrounding the offence , job relatedness of the offence, the time that has lapse since the offence, a person education level at the time of the offence, a person age at the time of the offence or how all these determinates justify their business necessity to automatically disqualify members of a protected class and regardless of it disparate impact on such as class.

4. On 9 -13-2010 I E-mailed Mrs. Cox to follow up and see if I was a candidate for the position; I wanted to let her know that I was still interested in the position and I hoped my past did not ruin my chance at getting an equal employment opportunity. In rapid response to my E-mail on 9-13-2010 Mrs. Cox of Matrix informed me that INVESCO ran a criminal background check on me and I was automatically disqualified. Afterwards, I decided to pick myself up and I said to myself keep trying. See exhibit A-3A and A-3B

5. Subsequently, On Aug 20, 2010 I received a e-mail communication from Kati Jones of National Prosource AKA as Technical Prosource which invited me to apply for a position they wanted to fill (see exhibit A-4J).I quickly communicated that I was interested .There was a password assigned for the online portal; I fill out the online application; there was a notice which informed me of the Fair Credit Reporting Act and the summary of rights; which I read and adhered to. Subsequently, I went the interview which was scheduled by Katie Jones of Prosource on 8\23\2010 at 8:00 in the morning.

6. During the interview, I was vetted by Brendan Mikeska Snr. Account Manager at National ProSource as well as Katie Jones, they were happy with this portion and things went rather smoothly. During the second phase of the interview I was tested on my skills set as it related to SQL. I was taken to the testing location by; Katie who then configured the system so I could test .During this time Katie went to her office and Brendan went to his office (see exhibit A-2B and A-2C which show the test result).

7. After the testing session Miss Jones  came out and was pleased with the results; she had indicated to me that my scores was some of the highest she had seen. Then she asked me about my criminal background; Jones informed me that she had retrieved the records; and asked me to tell her about the incidents the records revealed. At that moment I felt I had no choice but to fully disclosed my past, and my perceived private matters so I did; while simultaneously recognizing I had been lied to about the 7 years condition as it related to the FCRA; in which I was told Prosource would abide by; and I detrimentally relied on their written and expressed contract that they would; nevertheless in breach of the FCRA standards in which they misrepresented to me by saying; they only consider relevant job related matters that do not predate seven years.

At that point it became clear that Jones went into her office and retrieved my criminal background from an online source(s) while I was testing: at the time I was unsure from where but according to defendant's exhibit A-2 that was uncovered. My past became the sole purpose and centerpiece of their rejection as was Matrix. See plaintiff's Exhibit A-2C and A-3A in which Katie Jones expressed this very point in an e-mail to plaintiff. I reminded her that they said that they would adhere to the FCRA and did adhere to the standards of the Fair Credit Reporting Act and could only go back seven years; Jones reply was " we  can go back up to 20 years" I asked Jones in disgust and dismay was that practice against the law and Jones replied "No".

8. Defendant Prosource has an employment practice that seems neutral on its face but it has a disparate impact on members of protected classes which violates Title VII. Defendant John Davis an Interested witness in the outcome of this case; stated in his oath at paragraph 9-line 5(see defendants exhibit A) misrepresents the facts; when he states the following;

which I dispute "Manley was not disqualified from his employment because he had a criminal record" when indeed I was disqualified solely of my criminal history. His employee or Prosource's employee Kati Jones the actual recruiter, the actual person who had hands on dealing with me and with personal knowledge of the facts contradicts Mister Davis speculation and suggestive reasoning. Jones in an email communication clarified the reason why I was disqualified when Jones wrote the following (see Plaintiff exhibit A-2C):

> I am sorry you have not yet found a position. I want to be clear, I did not say you would   be hired for the position, I said you were a very good candidate for the position and had an excellent shot of being considered for it if not for your background. Unfortunately they are in the process of making an offer to a person.

Unfortunately I don't have anything else that requires your skillset.

Regards,

   Moreover ,I never meet Mister Davis, I never talked to Mister Davis, and Mister Davis was never in any direct contact with me in order to affirm he has personal knowledge of the facts that happen during my interview process with Katie Jones; in which he affirms he has which is a bold misrepresentation.

   9. Katie Jones and I fully discussed my past during the interview which Mister Davis is clearly unaware of; the only issue that Jones was concerned with was a criminal record period; not that I answered no to the vague and misrepresent question; inwhich Prosource inducement me to answer within the scope of FCRA  and requested my permission to only

conduct a search limited to relevant and job related matter of a period of seven years.

Equally,I fully disclosed to Jones my past because of the undue influence Prosource exercised; seeing that they were the dominate party in the negotiation and contracting phase. Jones was acting in Prosource's behalf and Prosource acting in Invesco's behalf; knowingly and willfully continued to violated my civil rights, as well as states' rights under the law.

Jones misrepresentation was presented to me as a condition of employment, which was Prosource adhered to the standards of the FCRA, which I accepted within the scope of the FCRA. I agreed only to give Prosource permission to conduct a search within the scope of the FCRA. I wholeheartedly believed Jones when she said that Prosource adhered to the FCRA. I answered the question on Prosources's application because Prosources's application noted their adherence thereto. (see Plaintiff exhibit A-4H and A-4I) page 2 of the Application Information line 10 of paragraph 1 which state the following, " I certify that … I have read the attached summary of rights under the fair credit reporting act.

10. Mister Davis contends that there were white men who were automatically disqualified because they answered no to the same question. It is conceivable that, they too were mislead and told about the FCRA and induced to answer in a manner consistent with their misrepresentation or inducements, as well as Prosource's hidden  intention to go beyond the scope of the law; and any agreed permissions granted Prosource to conduct their search.

Moreover, Davis affirms Prosource maintains an hiring practice that automatically or uniformly disqualifies people of all races with criminal records and therefore Davis seem to feel that Prosource's practice is not discriminatory but fair; because Prosource does not hire anyone with a criminal past who apply for a position; no matter if that applicant is Black,

Mexican, Asian , Or White  nevertheless;  the law differs with Prosource's view as expressed in the following excerpt;

> "Disparate impact" or "adverse impact "generally refers to "employment practices that are facially neutral in their treatment of different groups, but that in fact fall more harshly on one group than another and cannot be justified by a business necessity

11.All the facts stated herein are within my personal knowledge. I was discriminated against. My criminal record was Prosource's sole reason for denying me an opportunity to become gainfully employed. Kati Jones e-mailed me Prosource's reason why I was disqualified from the selection process (see Plaintiff exhibit A-2C). Additionally, on 8/23/2010 during the interview I fully disclosed my history to Jones who expressed to me then that my chances of getting an assignment was dismal at best; because I had a record.


12. There was never any mention of an incomplete application or a misstatement because there was none or the issues was not relevant to the assignment or job related. The fair credit acts was violated; my federal civil rights were all so violated in the process. Searches of criminal records should be conducted in good faith and not used in a discriminatory manner or as a discriminatory employment practice that seem neutral on its face; and should not statistically have a disproportionate adverse effect on minority applicants.

13. Every exhibit in support of Plaintiff Response to Defendants summary judgment; to my knowledge is a true and correct copy



Stephen Manley

SWORN TO and SUBSCRIBED before me by _____ on Aug 31, 20 11.

Otalia Lopez

Notary Public in and for
the State of _____ Texas

OTALIA LOPEZ
My Commission Expires
March 18, 2012