IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN MANLEY, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-2408 |
| | § | |
| NATIONAL PROSOURCE, INC., | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

This case is before the Court on Defendant National ProSource, Inc.'s ("ProSource") Third Motion for Summary Judgment ("Motion") [Doc. # 150].[1] Plaintiff filed a Response [Doc. # 153], ProSource filed a Reply [Doc. # 158], Plaintiff filed a Sur-Reply [Doc. # 161], and ProSource filed a Sur-Sur-Reply [Doc. # 169]. ProSource also filed a Motion to Strike and Objections to Plaintiff's Summary Judgment Evidence [Doc. # 159]. Plaintiff filed a Response [Doc. # 160]. The Court has carefully reviewed the record, the parties' arguments, and the applicable law, and concludes ProSource's Third Motion for Summary Judgment should be **granted** and

---

[1]     In its Motion, ProSource explicitly incorporates the arguments made in its Second Motion for Summary Judgment [Doc. # 89]. Motion, at 3 n.2, 10. Because the Court did not address the merits of these arguments in its November 6, 2012 Memorandum and Order [Doc. # 105] and because Plaintiff addresses these arguments in his Response and Sur-Reply, the Court construes ProSource's Motion as incorporating ProSource's arguments from its Second Motion for Summary Judgment.

its Motion to Strike and Objections to Plaintiff's Summary Judgment Evidence is

**denied as moot**.[2]

## I.    **BACKGROUND**

In 2010, Invesco Group Services, Inc., Invesco Investment Services, Inc., and

Invesco Management Group (collectively, "Invesco") hired ProSource and Matrix

Resources, Inc. ("Matrix"), another staffing agency, to find applicants for a temporary

job opening for a junior Siebel developer in Houston, Texas. When the job opening

was not filled after a few months, Invesco instructed Matrix and ProSource to broaden

their search to include candidates qualified for a junior Structured Query Language

("SQL") developer position who could then be trained on Siebel. Matlapudi Depo.,

at 7-8.

On August 13, 2010, Matrix recommended Plaintiff for the position. Sanner

Email [Doc. # 62], Exh. D. Invesco decided not to interview or hire Plaintiff.

Matlapudi Depo., at 10.

With knowledge of Matrix's referral, ProSource asked Plaintiff to submit an

application and interview with ProSource for a referral for the Siebel developer

---

[2]    Prior to ruling on this Motion, the Court was aware of Plaintiff's Motion for Recusal
[Doc. # 178] and considered all arguments and documents cited therein. Because the
Court has denied Plaintiff's Motion for Recusal, *see* Doc. # 183, the Court will decide
this Motion. As discussed in the Court's April 4, 2013 Memorandum and Order, the
Court considered all materials submitted by Plaintiff in conjunction with this case
when deciding the present Motion.

position.  Plaintiff submitted a written application to ProSource on August 20, 2010.
Application [Doc. # 89], Exh. A; Jones Depo., at 39.  In his written application,
Plaintiff indicated that he had never "been convicted of a crime or agreed to enter a
pretrial diversion or similar program in connection with the prosecution of a criminal
offense."  Application, at 1.  By signing the application, Plaintiff stated that he
"underst[ood] that any misrepresentation, falsification or omission of information may
be grounds for termination of the interview process, refusal to hire or, if hired,
termination of employment" and authorized ProSource to run his criminal background
report.  *Id.* at 2.

On August 23, 2010, Kati Jones, a ProSource technical recruiter, interviewed
Plaintiff and Plaintiff took a skills test.  Jones Affidavit [Doc. # 100], Exh. 1, at 28-29;
Jones Depo., at 16, 39.  While Plaintiff was completing the skills test, ProSource
requested and received Plaintiff's criminal background report from a third party credit
reporting agency.  Jones Depo., at 16-17; Manley Background Report [Doc. # 89],
Exh. B (indicating Plaintiff's criminal background report was completed "8/23/2010
10:36 AM EDT").  Plaintiff did not, at any time during the testing and interview
process, tell ProSource that he had any criminal convictions.

Plaintiff was notified by the third party credit reporting agency that his
employment "WILL or MAY POSSIBLY be negatively affected based on the instant

searches run on this subject." *Id.* at 1.  The criminal background report revealed that Plaintiff had been convicted of driving with an invalid license in 2006, assault causing bodily injury in 2001, and theft of between $20 and $500 in 1995.  *Id.* at 1-3; Manley Criminal Record for 2001 Assault [Doc. # 89], Exh. B, at 2-3; Manley Criminal Record for Driving While License Suspended [Doc. # 89], Exh. B, at 1-2;  Manley Criminal Record for Theft [Doc. # 89], Exh. B, at 3.

ProSource did not refer Plaintiff to Invesco for the SQL developer position. Jones Depo., at 19, 21-22, 72; Jones Email [Doc. # 153], Exh. 10, at 12-13. Ultimately, Invesco found and hired a candidate, a non-Black female, to fill the SQL/Siebel developer position without the assistance of ProSource or Matrix. Matlapudi Depo., at 12-13.

On June 24, 2011, Plaintiff, proceeding *pro se*, filed an Original Complaint [Doc. # 1] against Invesco, ProSource, and Matrix, raising a disparate impact discrimination claim, and possibly a disparate treatment discrimination claim, each based on applicants' criminal histories and the effect of those histories on applicants of different races, colors, and sexes.  He asserted that each Defendant has "a pattern and a blanket policy to deny employment opportunity [sic] to individuals with criminal records which disparately impacts and adversely affects the minority applicant pools who are protected classes under the law" in violation of Title VII of

the Civil Rights Act of 1964, the Civil Rights Act of 1991 [42 U.S.C. § 1981], and Section 605 of the Fair Credit Reporting Act ("FCRA").  Compl. [Doc. # 1], at 3, ¶ 8.  Plaintiff further alleged that "the retrieved criminal information antedated seven years which also violated plaintiff's rights under the FCRA § 605 [15 U.S.C. § 1681c] and was used as the sole determinant in denying plaintiff an employment opportunity."  *Id.*

In July 2011, Defendants each answered the Complaint [Docs. # 9, # 10, and # 11].  On August 15, 2011, ProSource filed a motion for summary judgment [Doc. # 17], which was denied after full briefing [Doc. # 27].  The parties then engaged in extensive written discovery and depositions of Plaintiff and several of Defendants' employees.  On April 25, 2012, almost three months after the deadline to amend pleadings, Plaintiff sought permission to file an amended complaint [Doc. # 45], but did not file a proposed pleading.  On July 20, 2012, the Court issued a Memorandum and Order [Doc. # 64] allowing the Plaintiff to elaborate on his pre-existing Title VII, 42 U.S.C. § 1981, and FCRA § 605 claims and denying his motion to add new federal and state claims.

Matrix, ProSource, and Invesco filed Motions for Summary Judgment.  Matrix Motion for Summary Judgment [Doc. # 62]; ProSource Second Motion for Summary Judgment [Doc. # 89]; Invesco Motion for Summary Judgment [Doc. # 97].  The

Court granted summary judgment on all claims against Matrix and Invesco. November 6, 2012 Memorandum and Order [Doc. # 105].  The Court granted ProSource's Motion for Summary Judgment as to Plaintiff's Fair Credit Reporting Act claims and denied ProSource's Motion as to Plaintiff's discrimination claims without reaching the merits of those claims against ProSource.  *Id.*

In response to the Court's ruling, Plaintiff filed an appeal [Doc. # 108], a Motion for Relief from Judgment [Doc. # 111], and a Motion for Reconsideration [Doc. # 112] objecting to the dismissal of his claims against Matrix and Invesco.  He also filed a "Motion Requesting Refiling of Plaintiff Fair Credit Reporting Claim" [Doc. # 115], a Motion to Add or Amend Findings of Fact [Doc. # 123], and a Motion to Take Judicial Notice of Facts [Doc. # 142] as to ProSource.  The Court denied each of these motions on January 31, 2013.  January 31, 2013 Memorandum and Order as to Motions Involving Invesco and Matrix [Doc. # 154]; January 31, 2013 Memorandum and Order as to Motions Involving Prosource [Doc. # 155].  Plaintiff filed a Second Motion to Take Judicial Notice of Facts [Doc. # 156], which was denied by the Court.  February 8, 2013 Memorandum and Order [Doc. # 157].

## II.   <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support

of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).   The moving party bears the burden of demonstrating that there is no evidence to support the nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325; *Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008).  If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).  The Court construes all facts and considers all evidence in the light most favorable to the nonmoving party.  *Nat'l Union*, 532 F.3d at 401.

Although the Court may consider other materials in the record, the Court only needs to consider cited materials.  FED. R. CIV. P. 56(c)(3).  The Court is not required to accept the non-movant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of

evidence.  *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing

*Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 413 (5th Cir.

2003)); *see also Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d

395, 399 (5th Cir. 2008) (stating that "conclusory allegations" or "unsubstantiated

assertions" do not meet the non-movant's burden);  *In re Hinsley*, 201 F.3d 638, 643

(5th Cir. 2000) (explaining that "a party's self-serving and unsupported claim" in an

affidavit will not defeat summary judgment where the evidence in the record is to the

contrary).    Affidavits cannot preclude summary judgment unless they contain

competent and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(c)(4); *Love v.

Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Hous.*,

244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).   Instead, the nonmoving party must

present specific facts which show "the existence of a genuine issue concerning every

essential component of its case."  *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n,

Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (internal quotation marks and citation

omitted).  In the absence of any proof, the Court will not assume that the non-movant

could or would prove the necessary facts.  *Little v. Liquid Air Corp.,* 37 F.3d 1069,

1075 (5th Cir. 1994) (*en banc*) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871,

888 (1990)).

## III.    DISPARATE TREATMENT DISCRIMINATION CLAIM

### A.    Legal Standard

Plaintiff arguably alleges two types of Title VII discrimination, disparate treatment[3] and disparate impact discrimination.  *See Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000).[4]  Title VII makes it unlawful for an employment agency "to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(b).  To prevail on his disparate treatment discrimination claim, Plaintiff must prove that ProSource deliberately discriminated against him.  *See id.*  Plaintiff can meet his burden to prove intentional discrimination through direct evidence, statistical evidence, or by satisfying the circumstantial evidence test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See, e.g., Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001); *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 179-80 (5th Cir. 1999); November 6, 2012 Memorandum and Order

---

[3]    Plaintiff testified in his deposition that he brought a disparate impact claim, but not a disparate treatment claim, against ProSource.  Manley Depo., at 265.  He also testified that he had no basis for believing that ProSource discriminates against Blacks or males.  *Id.*  Despite these statements, because Plaintiff is *pro se* and because of certain arguments he has asserted in his brief in response to ProSource's Motion, the Court addresses any implicit disparate treatment claim he intends to raise.

[4]    The Court's summary judgment analysis is the same for discrimination claims under Title VII and 42 U.S.C. § 1981.  *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002) (citing *Pratt v. City of Hous.*, 247 F.3d 601, 606 n.1 (5th Cir. 2001)).

[Doc. # 105].  To establish a *prima facie* case under *McDonnell Douglas*, the plaintiff must demonstrate that he: "(1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably."  *Okoye*, 245 F.3d at 512-13 (citations omitted); *see also Vaugh v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

If the plaintiff establishes a *prima facie* case, a presumption of discrimination is applied and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.  *McDonnell Douglas*, 411 U.S. at 802; *Okoye*, 245 F.3d at 512.  The burden on the defendant at this stage "'is one of production, not persuasion . . . [and] can involve no credibility assessment.'"  *Rios v. Rossotti*, 252 F.3d 375, 379 (5th Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000)).  If the defendant sustains its burden, "the presumption of discrimination dissipates."  *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (citation omitted); *see also Vaugh*, 665 F.3d at 636.

The burden then "shifts back to the plaintiff to establish: (1) that the employer's proffered reason is not true[,] but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another

'motivating factor' is the plaintiff's protected characteristic." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citation omitted). "The plaintiff bears the ultimate burden of persuading the trier of fact . . . that the employer intentionally discriminated against [him] because of [his] protected status. *Wallace*, 271 F.3d at 220 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511-12 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "To establish pretext, [the plaintiff] must show that [the defendant's] proffered explanation is false or unworthy of credence." *Vaughn*, 665 F.3d at 637 (internal quotation marks and citation omitted). "[A]n employee's burden of demonstrating pretext is satisfied where he brings evidence 'challenging the substance' of the employer's reason together with 'evidence that undermines the overall credibility of [the employer's] proffered justification.'" *Jackson v. Watkins*, 619 F.3d 463, 467 n.3 (5th Cir. 2010) (citation omitted).

## B.    <u>Analysis</u>

Initially, it is noted that Plaintiff does not complain of any intentional violation of rights held by any of the class of individuals protected by Title VII or 42 U.S.C. § 1981. In his Complaint, Plaintiff asserts that ProSource discriminated against him when it refused to refer him to Invesco for employment because of his criminal

record.[5]

Individuals with criminal histories do not constitute a protected class under Title VII.  The relevant provision of Title VII bars employers from refusing to refer for employment "any individual because of his race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(b).  Plaintiff cannot base his Title VII claim on his status as a person with a criminal record and, therefore, he has not pleaded a viable legal claim for disparate treatment discrimination.  Plaintiff does not allege that ProSource failed to refer him because he was a Black or male *per se*.  Nor does Plaintiff allege that ProSource refused to refer applicants with criminal records only if they were Black and/or male.  Instead, he asserts that ProSource has a policy of refusing to refer *all* applicants who have a criminal record.

In any event, the uncontroverted evidence reveals that ProSource did in fact refer for potential employment Blacks and males who had criminal records.  Two of

---

[5]    *See, e.g.*, Complaint [Doc. # 1], at 3; Response, at 6-7 (arguing that ProSource refuses to refer qualified applicants who have a criminal past); *id.* (asserting that ProSource's contract with Invesco "bars all applicants with a criminal record . . . ."); *id.* at 10 ("Plaintiff was automatically excluded from the selection process due to his unrelated criminal history . . . .");  *id.* at 10-11 ("applicant and plaintiff Stephen Manley was discriminatory dismissed from the selection process when Prosoure [sic] discovered that Manley had a criminal record unrelated to business necessity" (emphasis removed)); *id.* at 31 (arguing that ProSource has refused to refer "qualified applicants for employment who have a criminal history unrelated to the applicant's ability to perform a job or [ProSource's] business necessity"); *id* at 46 (alleging that ProSource "arbitrarily excludes any person with a criminal history").

the applicants on which Plaintiff relies in his Response are Black males who had criminal records and were referred by ProSource.  *See* NPS File 544 [Doc. # 153], Exh. 23, 24; NPS File 860 [Doc. # 153].  The data provided by Plaintiff's expert establishes that 23 Blacks and 31 males with criminal records were referred by ProSource, 13 of whom were Black males.  Final Data Spreadsheet [Doc. # 170]; Analysis Spreadsheets [Doc. # 170].[6]  Additionally, these records reveal that 57 Whites and 61 females, 27 of whom were White females, had criminal records and were not referred.  *Id.*

Even if Plaintiff alleged and had evidence sufficient to demonstrate a *prima facie* case of disparate treatment discrimination, Plaintiff has offered no evidence that

---

[6]     Plaintiff gave a "USB stick" (the "USB Flash Drive") to the Clerk's Office at the time he filed his Sur-Reply [Doc. # 161].  *See* Feb. 25, 2012 Docket Entry [Doc. # 162]. The USB Flash Drive contains (1) an Excel spreadsheet titled "ManleyvInvesco Data FINAL" with a list of 208 applicants (the "Final Data Spreadsheet"); (2) an Excel file titled "Analysis pivot1" with spreadsheets containing a list of male applicants, a list of Black applicants, a list of White applicants, a table labeled "Racial Balance," and a spreadsheet labeled "Basis of Disparate Impact" (collectively, the "Analysis Spreadsheets"); (3) a copy of Bardwell's expert report; and (4) a video of Plaintiff interviewing applicant Lamar Douglas.  The Court now understands that the files on the USB Flash Drive have been turned over to ProSource.  The Court gave ProSource the opportunity to address the contents of the USB Flash Drive in a response to Plaintiff's Sur-Reply.  *See* Feb. 16, 2013 Order [Doc. # 163].  Accordingly, ProSource addressed the Lamar Douglas video in its Sur-Sur-Reply [Doc. # 169].  In accordance with this District's Administrative Procedures for Electronic Filing in Civil and Criminal Cases, the Court directed the Clerk's Office to file the Excel spreadsheets and other non-video materials on Plaintiff's USB Flash Drive [Doc. # 170].  The Court, in deciding the pending motion, considers the USB Flash Drive's contents, as Plaintiff requests.

ProSource's proffered reason for refusing to refer him was mere pretext or that Plaintiff's race, color, or gender was another "motivating factor" behind its decision. ProSource asserts that it did not refer Plaintiff because he lied about his criminal record on his application.  "[M]isrepresentations on employee documents can be a legitimate, nondiscriminatory reason for an adverse employment decision, like declining to hire or firing an employee." *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 622 (5th Cir. 2009) (citing *Avant v. S. Cent. Bell. Tel. Co.*, 716 F.2d 1083, 1086-87 (5th Cir. 1983)); *see also Bishop v. Texarkana Tex. Police Dep't*, 370 F. App'x 546, 548 (5th Cir. Mar. 25, 2010) (unpublished); *Bruton v. Runyon*, 101 F.3d 701, at *1-2 (5th Cir. Oct. 24, 1996) (unpublished).  In support of its contention, ProSource cites two white applicants who lied on their applications and were not referred for employment.  NPS 852 File [Doc. # 89], Exh. G; NPS 1159 File [Doc. # 89], Exh. F.  The data compiled by Plaintiff's own expert, Robert A. Bardwell, Ph.D., reveals that 28 White applicants and 29 female applicants lied on their applicants and were *not* referred. *Id.*  Plaintiff's conclusory assertions to the contrary are insufficient to establish a genuine issue of material fact that ProSource's legitimate, nondiscriminatory reason for not referring him was false or pretext.[7] *See*

---

[7]     It is unclear if Plaintiff intends to assert a disparate treatment claim that ProSource does not refer Black applicants who lie on their applications but does refer White applicants who lie, rather than using this theory as an argument that ProSource's
                                                                                    (continued...)

*Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted).  Thus, the

---

[7]        (...continued)
proffered reason is pretextual.  The Court construes any request to add this theory to
be a request to amend Plaintiff's Complaint, *see Riley v. Sch. Bd. Union Parish*, 379
F. App'x 335, 341 (5th Cir. 2010) (unpublished).  That request is denied.  To
determine whether the moving party has established "good cause" for leave to amend
after the scheduling order deadline, courts consider:  "(1) the explanation for the
failure to timely move for leave to amend; (2) the importance of the amendment;
(3) potential prejudice in allowing the amendment; and (4) the availability of a
continuance to cure such prejudice." *Marathon Fin. Ins., Inc. v. Ford Motor Co.*, 591
F.3d 458, 470 (5th Cir. 2009) (citations omitted); *S&W Enters., L.L.C. v. SouthTrust
Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003) (citation omitted).  Plaintiff has
not shown that amending his Complaint at this time—more than a year after the
original January 2012 deadline to amend pleadings—is warranted.  Scheduling Order
[Doc. # 28], at 1.  Plaintiff had ample information to have alleged this theory well
before now and before an extended amendment deadline of July 2012.  *See
Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005)
(per curiam); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340-41 (2d Cir.
2000).  ProSource articulated its proffered reason for not referring Plaintiff, *i.e.*, that
he lied about (and did not correct) his criminal history on his application on August
11, 2011, in its First Motion for Summary Judgment [Doc. # 14].  *See id.* at 3-5.
Plaintiff  received discovery from ProSource, including the files of all ProSource
applicants who had been charged with a crime, on April 16 and 20, 2012.  *See* April
25, 2012 Manley Affidavit [Doc. # 47], at 1.  Plaintiff then sought to amend his
complaint [Doc. # 45].  The Court granted Plaintiff's motion to amend to the extent
he sought to "elaborate on his pre-existing Title VII, 42 U.S.C. § 1981, and FCRA
§ 605 claims."  July 20, 2012 Memorandum and Order [Doc. # 64], at 10.  Plaintiff
elected not to do so.

Changing the basis for his claims at this late stage in the case would result in
substantial delay in this already prolonged case and would prejudice ProSource, the
only remaining Defendant.  ProSource has already filed three Motions for Summary
Judgment [Docs. # 14, # 89, and # 150].  Additional expense and delay would result
also because discovery, which closed on August 22, 2012, would need to be reopened.
*See* July 20, 2012 Memorandum and Order [Doc. # 64], at 11.  Docket call was set for
April 3, 2013, and now is May 9, 2013.  Accordingly, the Court does not permit an
implicit amendment to the Complaint.  It is noted, in any event, that Plaintiff's
evidence submitted in connection with his expert's analysis belies this claim for
reasons described in the text.

Court concludes that Plaintiff has failed met his summary judgment burden and dismisses his disparate treatment discrimination claim.  The Court grants ProSource's Third Motion for Summary Judgment as to Plaintiff's disparate treatment discrimination claim.

## IV.    **DISPARATE IMPACT DISCRIMINATION CLAIMS**

### A.    **Legal Standard**

"Disparate impact claims involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity."  *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).  Proof of an intent to discriminate is not required.  *Munoz*, 200 F.3d at 299.  For a plaintiff to establish a *prima facie* disparate impact claim, a plaintiff must (1) "identify the employment practice that has the allegedly disproportionate impact" and (2) "establish causation by offering statistical evidence to show that the practice in question has resulted in prohibited discrimination."  *Stout*, 282 F.3d at 860.  In most cases, this requires a showing of a substantial "statistical disparity between protected and non-protected workers in regards to employment or promotion."  *Id.* (citing *Munoz*, 200 F.3d at 299-300).  If the plaintiff makes a *prima facie* case of disparate treatment, the defendant "can rebut

a prima facie showing of disparate impact by proving that the challenged policy is a business necessity." *Pacheco v. Mieta*, 448 F.3d 783, 787 (5th Cir. 2006) (citing *Griggs v. Duke Power Co.*, 404 U.S. 424, 431 (1973)).

**B.    Analysis**

**1.    Claims Based on Race and Color**

For Plaintiff's race and color-based impact discrimination claims, Plaintiff relies heavily on expert opinions proffered by Devah Pager, Ph.D. ("Pager") and Robert A. Bardwell, Ph.D. ("Bardwell"). *See* Devah Pager, Ph.D., *Report* [Doc. # 94], Exh. 3, Exh. 4 ("Pager Report"); Robert A. Bardwell, *Report of the Effect of Race on Employment Referral by ProSource* [Doc. # 161], Exh. 3, dated August 20, 2012 ("Bardwell Report"); Affidavit of Robert A. Bardwell Ph.D. [Doc. # 161], Exh. 3, dated February 15, 2013 ("Bardwell Affidavit").  Plaintiff also has culled information from ProSource's applicant data provided in discovery.  The Court first addresses the admissibility of the experts' opinions and then considers Plaintiff's other evidence.

**a.    Expert Opinions**

"Plaintiffs . . . must conduct a systemic analysis of th[e] employment practices in order to establish their [disparate impact discrimination] case." *Munoz*, 200 F.3d at 300-01 (citing *Black Fire Fighters Ass'n v. City of Dallas*, 905 F.2d 63, 63 (5th Cir. 1990)).  When determining the admissibility of an expert's opinions and report, the

Court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts at issue." *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993)).  This so-called "gate-keeping" obligation applies to all types of expert testimony, not just "scientific" testimony. *Id.* at 617-18 (citing *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).  The Court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 151.  The Court first must determine that the witness is qualified as an expert in the relevant field.  To do so, the Court must assess "whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case." *Tanner v. Westbrook*, 174 F.3d 542, 548 (5th Cir. 1999) (quoting *Kuhmo*, 526 U.S. at 156).

The judge also must pre-screen the expert witness's proffered opinions to ensure that they comply with the other requirements of Rule 702 of the Federal Rules of Evidence—that expert testimony is admissible only (1) if it qualifies as scientific, technical, or other specialized knowledge and (2) if it will assist the trier of fact to

understand the evidence or resolve a disputed factual issue.  *Daubert*, 509 U.S. at 589; *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997).  The first inquiry concerns reliability; the second inquiry is essentially a relevance inquiry.  *See Daubert*, 509 U.S. at 590-91; *Watkins*, 121 F.3d at 989.  The burden is on the party offering the expert testimony to establish that it is admissible.  *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

### i.      Bardwell Opinions

One of Plaintiff's experts, Robert A. Bardwell, Ph.D., opines that "Black applicants were half as likely as similarly-situated white applicants to be recommended for employment by ProSource."  Bardwell Report, at 2; *see also* Bardwell Affidavit, at 4.  It appears that Bardwell relied on the extensive data produced by ProSource about the applicants it handled for a several year period.[8]

The Court, for the purpose of this analysis, assumes without deciding that Bardwell is qualified as an expert in the field of statistics.[9]  After carefully examining Bardwell's Report, Bardwell's Affidavit, and the data on which he apparently relied, the Court finds that Bardwell's methodology contains significant flaws or omissions

---

[8]      In his Report, Bardwell states that he relied on ProSource applicants NPS 8 through NPS 1504 and the documents listed on pages 6-7 of his Report.  *See* Bardwell Report, at 4 n.7-8, 6-7.

[9]      The record in this regard is incomplete.

that render his opinions unreliable and not relevant to Plaintiff's disparate treatment discrimination claims. Bardwell's opinions do not meet the requirements of Federal Rule of Evidence 702, *i.e.*, that the expert's opinions be reliable, be relevant, and assist the trier of fact.

First, Bardwell's opinions do not address the issue raised by Plaintiff in this suit: whether Black or male applicants were disproportionally impacted by ProSource's alleged policy of not referring applicants with criminal records. *Compare* Complaint, at 3, *with* Bardwell Report, at 2 and Bardwell Affidavit, at 4. Instead, Bardwell analyzes only whether White applicants generally were more likely to be referred by ProSource than Black applicants. Bardwell Report, at 2, 5-6.

Second, Bardwell's methodology is fundamentally flawed because he did not take into account the availability of job openings for which a particular applicant was qualified. *See* Bardwell Report, at 4-5; Bardwell Affidavit, at 4; Sur-Sur-Reply, at 19. If no positions were available requiring the applicant's skill set at the time the applicant applied to ProSource, ProSource would not have been able to refer the applicant even if it wished to do so.

Third, Bardwell's conclusions also are unreliable because he counted individuals whose criminal charges were all dismissed, who were given deferred adjudication, who were not convicted of the crime they were charged with, and who

had no criminal record at all.  Final Data Spreadsheet [Doc. # 170]; Analysis Spreadsheets [Doc. # 170]; *see also* Bardwell Report, at 4-5.  Approximately 43% of the Black applicants and 30% of the White applicants considered in Bardwell's Report had no criminal convictions.  Based on Bardwell's supporting data submitted by Plaintiff, it also appears that Bardwell considered an additional five applicants where the outcome of the charges brought against them is unknown.  *See* Final Data Spreadsheet [Doc. # 170].

Fourth, Bardwell appears to have treated applicants with materially different criminal backgrounds as similarly situated.  He grouped applicants into the categories called "traffic offense," "misdemeanor," "felony," and "violent felony" using solely each applicant's single most serious conviction.  Bardwell Report, at 4-5; *see also* Bardwell Affidavit, at 4.  Applicants with numerous convictions were treated the same as applicants with a single conviction.  *See* Bardwell Report, at 4-5.[10]

Fifth, Bardwell's opinions have not been shown to be reliable because he has provided no meaningful explanation of how he reached his conclusions.  There is no summary of which applicants were put into each peer group for analysis.  *See*

---

[10]    It is noted, also, that Bardwell did not differentiate by severity or age of convictions within the four categories.  *See id.*; *see also* Bardwell Affidavit, at 4.  It appears that Bardwell would have treated, for instance, a recent felony embezzlement or theft conviction the same as a decades-old felony conviction for possessing a small amount of marijuana.  *Cf., e.g.*, TEX. HEALTH & SAFETY CODE ANN. § 481.1161 (b) (defining possession of more than four ounces of marijuana as a felony).

Bardwell Report, 1-6; Bardwell Affidavit, at 3-4.  Bardwell's Affidavit merely states generally that he used files within a specified range of bate stamps, Bardwell Affidavit, at 3, and lists variables considered without analytical explanation.  Bardwell Report, at 4-5; Bardwell Affidavit, at 4.  An expert's *ipse dixit* conclusion is an insufficient basis for admissibility.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Johnson v. Arkema, Inc.*, 685 F.3d 452, 468 (5th Cir. 2012).

Finally, Bardwell does not explain how he addressed applicants whose racial identification was unclear based on their file.  Final Data Spreadsheet [Doc. # ]; Analysis Spreadsheets [Doc. # 170]; Bardwell Report, at 4.

Therefore, Bardwell's opinions are unreliable, not shown to be relevant and, accordingly, inadmissible.[11]

### ii.    Pager

Plaintiff's second expert, Devah Pager, Ph.D., concludes that Blacks were more likely to have criminal records and less likely to be hired in specified jobs than Whites

---

[11]    It is noted that Bardwell also did not consider a significant alternative explanation for his findings, namely, that applicants were not referred by ProSource because they lied about their criminal histories on their ProSource applications and did not correct the information in a timely manner.  *See* Bardwell Report, at 4-5.  Bardwell therefore did not address ProSource's articulated policy of not referring applicants who lie on their application and do not correct the lie before a criminal background check is conducted.  According to Bardwell's analysis of the data provided to him, out of 93 Black applicants, 29 reportedly lied about their criminal histories (31% lied).  Analysis Spreadsheets [Doc. # 170].  By comparison, 15 out of 110 White applicants are reported to have lied about their criminal history (13.6% lied).  *Id.*

with criminal records.  Pager's analysis is not sufficiently relevant to this case to be admissible.  Pager's Report does not analyze ProSource's referral practices.  *See* Pager Report [Doc. # 94], Exh. 3, at 40, Exh. 4, at 1-19.  There is no explanation or analysis of the racial makeup or employment success of individuals with criminal records in Houston; Harris County, Texas; Texas as a whole; or even in states bordering Texas. *Id.*  Instead, Pager relies on outdated nationwide data from 2004 and information from counties in Florida, Kentucky, Michigan, and Tennessee concerning felonies, not misdemeanors.  *Id.*  Pager also relies on field studies conducted in Milwaukee, Wisconsin, and New York City, not Houston, Texas.  *Id.*       Pager's conclusions lack reliability and relevance for other reasons.  "'When special qualifications are required to fill particular jobs, comparisons to the general population (rather than to the smaller group of individuals who possess the necessary qualifications) may have little probative value.'" *Crawford v. United States*, No. 3:04-CV-2619-L, 2006 WL 2167409, at *9 (N.D. Tex. Aug. 2, 2006) (Lindsay, J.) (quoting *Hazlewood Sch. Dist. v. United States*, 433 U.S. 299, 308 n.13 (1977)), *aff'd sub nom. Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369 (5th Cir. 2007) (unpublished).  In concluding that Blacks are more likely to be discriminated against among individuals with criminal records, Pager examined only jobs that required no previous experience or education beyond high school, including restaurant jobs, retail sales positions,

warehouse workers, couriers, drivers, and laborers.  *Id.* at 20.  In contrast, ProSource refers applicants for positions as information technology professionals, positions which require significant skills and are often assigned duties by employers requiring the use of confidential information.  Davis Affidavit, at 1.  The SQL developer position, for example, required systems development experience, formal training in systems analysis and computer programing, and SQL skills.  Doc. # 97, Exh. 2.  Pager's conclusions simply are based on out-dated data taken from inapplicable geographic regions and jobs.  Pager's findings are too general to be probative.

For these reasons, the Court concludes Pager's opinions are inadmissible in evidence to show any disparate racial impact to support Plaintiff's racial impact discrimination claim.

### iii.    Conclusion on Plaintiff's Experts

Plaintiff accordingly has not raised a genuine issue of material fact that ProSource's alleged policy has a disparate impact on Blacks.  *See Stout*, 282 F.3d at 360.  Plaintiff therefore has not met his summary judgment burden to raise a genuine question of material fact that ProSource's referral policies have a statistically significant disparate impact on Black applicants.

### b.    Exemplar Applicants

In support of his claim that ProSource's facially neutral policy of not referring

applicants with criminal records had a disparate impact on Black applicants, Plaintiff also attaches the files of 15 applicants[12] to his Response and cites, but does not attach, the files of four additional applications (NPS 12, NPS 247, NPS 464, and NPS 678).[13] *See* Response, at 15-16, 25, 30; Response, Exh. 6-27.  Of those 19 applicants, two are Black and were referred by ProSource.  NPS 544 File [Doc. # 153], Exh. 23, 24; NPS 860 [Doc. # 153], Exh. 27.  The race of four applicants cited or attached by Plaintiff (NPS 12, NPS 166, NPS 247, and NPS 572) is unclear from their files.[14]  *See* NPS 12 File [Doc. # 125], at 2-5; NPS166 File [Doc. # 153], Exh. 25 (listing the applicant as Black in part of the file and White in part of the file); NPS 247 File [Doc. # 125], Exh.1, at 2-5; NPS 572 File [Doc. # 153], Exh. 26.  Of the white applicants

---

[12]     Exhibit 23 and 24 of his Response are the files of the same applicant, NPS 544.

[13]     These files include the applicant's application to ProSource; the criminal record; and if the applicant was referred, a screen shot of ProSource's electronic record of the referral.

[14]     However, Plaintiff's expert categorizes three of the four of these applicants as White males without explanation and without providing evidence supporting this categorization.  *See* Final Data Spreadsheet [Doc. # 170] (listing NPS 12, NPS 247, and NPS 572 as White males).  Plaintiff complained to the Court that the some of the applicants' racial information was missing.  The Court ordered Plaintiff to provide a list of these individuals to ProSource.  There is no indication Plaintiff ever did so.  *See* ProSource Letter dated November 26, 2012 [Doc. # 130] (filed in response to Plaintiff's Letter to the Court dated November 22, 2012 [Doc. # 129]).  The Court also ordered Plaintiff to specify the race and gender of all applicants he believes are relevant to his claims.  December 13, 2012 Order [Doc. # 139].  Although he seems to have provided this list to ProSource, *see* Motion, at App'x A, Plaintiff has not provided the list to the Court.

whose applications Plaintiff cites or attaches, four have no criminal convictions. NPS 247 File [Doc. # 125], Exh. 1, at 2-5 (deferred adjudication); NPS 302 File [Doc. # 153], Exh. 19 (nolle prossed); NPS 823 File [Doc. # 153], Exh. 14 (dismissed); NPS 906 File [Doc. # 153], Exh. 7 (deferred adjudication); *see also* Rampelli Depo., at 111-12 (explaining that ProSource did not consider deferred adjudications to be convictions when reviewing applications).

Significantly, Plaintiff has not cited or attached the application of a single Black applicant, other than himself, who had a criminal record and was not referred. "A sample of only one would have far too little probative value to establish a prima facie case of disparate impact." *Connecticut v. Teal*, 457 U.S. 440, 463 n.7 (1982) (citations omitted). In contrast, ProSource attached the applications of several applicants to its Second Motion for Summary Judgment, including the application of an additional Black applicant with a criminal record who was referred, NPS 912 File [Doc. # 89], Exh. H, and the applications of two White applicants with criminal records who were not referred. NPS 852 File [Doc. # 89], Exh. G; NPS 1159 File [Doc. # 89], Exh. F. Plaintiff's argument therefore is founded on only 19 applications, a number far too small to be statistically significant or reliable.

Without citations to examples of other Black applicants, particularly Black applicants with criminal records who were not referred, and without evidence that a

substantial statistical disparity exists between protected and non-protected applicants, Plaintiff does not raise a genuine fact issue that ProSource's alleged policy had a disparate impact on Black applicants.   His disparate impact discrimination claim based on race is dismissed.

### 2.     Gender Claims

Plaintiff also has not offered evidence sufficient to raise a genuine fact issue that ProSource's alleged policy of failing to refer applicants with criminal records had a disparate impact on male applicants.   "[A] finding of disparate impact requires statistically significant disparities."  *Hill v. Miss. State Employment Serv.*, 918 F.2d 1233, 1238 (5th Cir. 1990).  Plaintiff offers no statistical evidence that males with criminal records were disproportionately impacted by the challenged policy.  In his Response, Plaintiff provided two examples of females with a criminal record, NPS 678 and NPS 1082, who were referred by ProSource despite those records.  *See* Response, at 25;  Final Data Spreadsheet [Doc. # 170] (confirming that NPS 678 is a White female with a criminal record); NPS 1082 File [Doc. # 153], Exh. 17.  The remaining 17 referred applicants cited by Plaintiff or attached by Plaintiff to his Response were male.

Further, according to the broader data supplied to Bardwell, 31 of 72 male applicants with criminal records were referred by ProSource, while only 13 of 74

female applicants with criminal records were referred.  Analysis Spreadsheets [Doc. # 170].  This evidence rebuts Plaintiff's contention that ProSource's alleged policy disparately impacted males.

### 3.    Conclusion on Disparate Impact Claims

In sum, without admissible statistical data or other evidence to support his disparate impact claim based on gender, Plaintiff has not raised a genuine issue of material fact that ProSource's policy disproportionately impacted males.  Plaintiff has failed to meet his summary judgment burden, and his disparate impact discrimination claim based on gender must be dismissed.

## V.   CAUSATION AND DAMAGES

ProSource argues that summary judgment should be granted because Plaintiff "cannot demonstrate a causal nexus between ProSource's policy of disqualifying from referral candidates who falsify information on their application and his alleged damages."  Motion, at 9.  Even if Plaintiff's admissible evidence were sufficient to support judgment in his favor on one or more of the claims he asserts (which it is not, as explained above), Plaintiff would be entitled as a matter of law only to nominal damages.  A plaintiff cannot recover damages under Title VII "unless the prohibited employment practice was the cause of the applicant's rejection." *Buchanan v. City of San Antonio*, 85 F.3d 196, 200 (5th Cir. 1996).  ProSource's refusal to refer Plaintiff

did not cause Plaintiff to lose a job opportunity with Invesco.  Before ProSource made any decision regarding Plaintiff, Plaintiff's application had been referred by Matrix (the other employment agency Plaintiff sued in this case) to Invesco.  Matrix did not conduct criminal history background check in conjunction with Plaintiff's referral, and there is no evidence that Invesco knew of Plaintiff's criminal history.  Invesco decided not interview or hire Plaintiff for the position in issue.  Because Invesco, after its own review without knowledge of Plaintiff's criminal history,  rejected Plaintiff, a referral by ProSource would have been an empty act.  Plaintiff therefore cannot show that ProSource's decision to not refer him was a cause of Invesco's hiring decision or that he suffered any loss of pay stemming from ProSource's failure to refer him.

Further, Plaintiff cannot obtain compensatory damages, even if he were able to prove a claim for disparate impact.  "Compensatory damages include relief for 'future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.'"  *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 410 (5th Cir. 1998) (citing 42 U.S.C. § 1981a(b)(3)).  "[C]ompensatory . . . damages are not available in disparate impact claims . . . ."  *Id.* at 423 (citing 42 U.S.C. § 1981a); *see also Colindres v. QuitFlex Mfg.*, 235 F.R.D. 347, 367 (S.D. Tex. 2006) (Rosenthal, J.).

Plaintiff also cannot recover punitive damages.  A plaintiff may only recover punitive damages if he demonstrates that the defendant engaged in one or more discriminatory practices "with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a.  By law, punitive damages are not available to Plaintiff on the record presented.  *See* 42 U.S.C. § 1981a; *Allison*, 151 F.3d at 423; *Colindres*, 235 F.R.D. at 367.  Neither Plaintiff's evidence, his many explanations in Court about his claims or beliefs regarding Defendants' conduct, nor any other evidence suggests that any ProSource acted with malice or reckless indifference to Plaintiff's federally protected rights.

Additionally, Plaintiff has not proven compensable emotional harm resulting from his claims.  This type of damage fits within "compensatory damages" and is unavailable for disparate impact discrimination claims.  *See* 42 U.S.C. § 1981a; *Allison*, 151 F.3d at 423; *Colindres*, 235 F.R.D. at 367.  More generally, "[c]ompensatory damages for emotional distress and other intangible injuries are not presumed from the mere violation of constitutional or statutory rights, but require specific individualized proof, including how each Plaintiff was personally affected by the discriminatory conduct and the nature and extent of the harm."  *DeCorte v. Jordan*, 497 F.3d 433, 442 (5th Cir. 2007) (citations omitted).  Plaintiff testified at his deposition that the incidents at issue have not prevented him from being able to carry

out normal daily functions.  Manley Depo. at 157.  His only evidence of emotional distress is his conclusory deposition testimony that he felt depressed.  *See id.* at 154. He has not offered evidence of the symptoms or effects of his depression and did not seek medical assistance, medication, or professional therapy other than speaking to the bishop at his church.  *Id.* at 154-56.  Instead, he testified that during that period of alleged depression, he began to start his own business.  *Id.* at 157.

Finally, Plaintiff prosecutes this case *pro se*.  As a result, attorney's fees are not recoverable.  *See Perkins v. Tex. Dep't of Crim. Justice-Corr. Institutional Div.*, No. 11-10615, 2013 WL 657681, at *1 (5th Cir. Feb. 22, 2013) (unpublished) (citing *Kay v. Ehrler*, 499 U.S. 432, 435-37 (1991)); *De Mino v. Achenbaum*, 136 F. App'x 695, 696 (5th Cir. June 27, 2005) (unpublished) (citing *Cofield v. City of Atlanta*, 648 F.2d 986, 988 (5th Cir. Unit B June 1981)).

## VI.    <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, it is hereby

**ORDERED** that Defendant National ProSource, Inc.'s Third Motion for Summary Judgment [Doc. # 150] is **GRANTED.**  It is further

**ORDERED** that Plaintiff's claims against Defendant National ProSource, Inc. are **DISMISSED with prejudice.**  It is further

**ORDERED** that Defendant National ProSource, Inc.'s  Motion to Strike and

Objections to Plaintiff's Summary Judgment Evidence [Doc. # 159] is **DENIED AS MOOT.**

The Court will issue a separate Final Order.

SIGNED at Houston, Texas, this <u>10th</u> day of **July, 2013.**

Nancy F. Atlas
United States District Judge

Nancy F. Atlas
United States District Judge